## WHITE *v.* WOOD et al.

*(Supreme Court, General Term, Second Department.   February 11, 1891.)*

RAILROAD COMPANIES—REORGANIZATION—BREACH OF TRUST—INJUNCTION.

The bondholders of a railroad company authorized defendants, as trustees, to purchase the road· and property on foreclosure, and to organize a new corporation, and divide the stock among the bondholders proportionate to the number of their bonds. Defendants formed a company, with a capital of $2,000,000, and transferred the property to it, but only required $994,000 of stock to be turned over for distribution to the bondholders, leaving the balance to be disposed of at the directors' discretion. In addition to the stock, defendants took ·from the corporation a note for $56,800 to repay them for the expenses of the reorganization. *Held,* that the failure to require all the stock to be turned over for distribution among the bondholders was a breach of the trust agreement, and a bondholder is entitled to enjoin the collection of the note until the agreement is complied with.

Appeal from special term.

Action by Josiah J. White, a bondholder of ·the Chattaroi Railway Company, against George C. Wood, Samuel D. D. Davis, Jerry Collins, and Anson Maltby, as a purchasing and organizing committee. Defendants appeal from a judgment enjoining and restraining them from collecting or receiving a note of $56,800, and awarding costs and extra allowance to plaintiff against defendants in the sum of $440.22. The following opinion was delivered at special term:

"The trust agreement between the bondholders of the Chattaroi Railway Company and the defendants, as a reorganization and purchasing committee, empowers the defendants to form a new company to take possession of the railroad and operate it. The agreement further distinctly provides that the stock of the new company shall be issued to the bondholders of the old one in proportion to the number of their bonds. Under the power thus conferred upon them, the defendants have organized a new corporation called the 'Ohio & Big Sandy Railroad Company,' with the capital stock of two millions of dollars; but, instead of requiring that the whole of this stock shall be turned over to themselves, as a reorganization and purchasing committee, for distribution *pro rata* among the Chattaroi bondholders, they have required only nine hundred and ninety-four thousand dollars of the stock thus to be turned over, and have provided that the balance may be disposed of from time to time by the board of directors of the new company, at its discretion, and shall be paid in from time to time upon calls by the board. The plaintiff, as a bondholder of the Chattaroi Railroad Company entitled to the benefits of the trust agreement with the defendants, brings this suit to restrain them from transferring the property of the Chattaroi to the Ohio & Big Sandy Railroad Company, except upon the issue of its entire two millions of stock for distribution among the Chattaroi bondholders. As to this part of the case, the defendants say that they actually made the transfer before the injunction was granted. It appears, however, by the deed of transfer, that the defendants received from the Ohio & Big Sandy Railroad Company, in addition to the $994,000 of stock, a promissory note of that corporation, payable on demand, for $56,800. The plaintiff alleges that the money represented by this note is really a payment by Collis P. Huntington to the defendants for services in obtaining for him a controlling interest in the bonds of the Chattaroi Railway Company; but the affidavits in opposition tend strongly to show that the ·

note is intended to repay to the reorganization and purchasing committee moneys necessarily expended, or to provide for expenses necessarily incurred in the administration of their trust. The injunction restrains them from receiving the money secured by this note, and to that extent is operative, even if it be true that it cannot operate to prevent a transfer of the property, because such transfer had been effected prior to this injunction. It seems to me that the scheme of reorganization adopted by the defendants, although apparently in good faith, is a departure from that which is provided for by the trust agreement. The scheme may be modified, however, so as to be unobjectionable. If the capital stock of the new company be reduced to $994,000, (leaving any subsequent increase, if necessary, to be made pursuant to the articles of incorporation or the statutes of Kentucky,) and the plaintiff be given his *pro rata* share, he will then have no cause for complaint. But, as the transaction now stands, the $56,800 note appears to have been given as part of the consideration of a contract differing from that contemplated by the trust agreement, and the plaintiff, therefore, may well insist that the defendants shall not realize upon the note until they make their scheme conform to the requirements of that agreement. When that is done the defendants may apply for a dissolution of the injunction. Meantime, however, it ought to remain in force. But, inasmuch as the interest on $56,800, during the pendency of the action, may amount to a considerable sum, which the plaintiff will be liable to pay in case of ultimate defeat upon the trial, the security given by him should be increased. The preliminary injunction granted herein by presiding Justice BARNARD will be continued, with costs to plaintiff to abide the event, provided the plaintiff give an additional undertaking in the sum of one thousand dollars, within five days after service of the order to be entered upon this decision. BARTLETT, J."

Argued before DYKMAN and PRATT, JJ.

*Anson Maltby*, for appellants. *William J. Gaynor*, for respondent.

PRATT, J. The opinion of Mr. Justice BARTLETT, filed with his decision upon the motion for injunction, so fully and fairly states the case that, although it was rendered before the case had been tried, it seems unnecessary to write at length at this time. There can be no doubt whatever, as found by the judge who tried the case, that the second organization mentioned in the case was not in accordance with the trust agreement, and the trustees had no rightful power to materially depart from the terms of that agreement. That each bondholder had a right to his *pro rata* share of the stock of any new organization is beyond question, and such provision was an essential part of the trust agreement, and beyond the power of the trustees to change or modify. The clause in the trust agreement giving power to the trustees to modify had reference solely to incidental powers necessary to carry out the essential parts of the agreement. Their conduct was a breach of duty, and gave the plaintiff a right of action, irrespective of the question whether or not they acted in good faith. Neither is it material to inquire whether all the conclusions of fact are supported by the evidence in the case, as enough are supported by the proofs to warrant the judgment. It does not seem exactly logical that the plaintiff shall be permitted to impound a debt due the trustees in order to force the trustees to indemnify the plaintiff for what he has lost by their failure to perform their duty. But this is rendered illogical only by the fact that the trustees succeeded in conveying the title to a *bona fide* purchaser before the plaintiff obtained his injunction. To stop the transfer, and prevent the payment of the money, was appropriate relief, upon the facts, from the plaintiff's stand-point of observation, and, inasmuch as a part of the relief cannot now be given on account of the unlawful acts of the trustees, I think he may have such part of the relief as remains upon the facts proved. It would seem unjust that a meritorious suit should be dismissed

from a court of equity because a part of the relief asked had been rendered impossible by a wrongful act of a defendant. The judgment must therefore be affirmed. But a court of equity will not permit a suitor to use its machinery for the purpose of injury or blackmail. The plaintiff had a perfect right to use his own judgment whether or not he would accept anything less than the amount of stock stipulated that he should have when he signed the trust agreement and delivered up his bonds. The counsel for the defendants in his brief has asked the court to "suggest how captious objections, urged by the plaintiff alone, can be obviated." The court cannot make agreements for the parties, but it can refuse relief when it is plain that its mandates are to be used for the purpose of oppression and wrong. It is impossible now to get back the property from Huntington, and it is plain that plaintiff's bonds or the stock offered to him are of small value. Under all the circumstances, therefore, indemnity can only be had by the plaintiff in money. As before stated, it would be unjust to turn him over to a suit at law to recover damages for a breach of duty, and it would also be unjust to allow him to take advantage of the situation to mulct the defendants in exorbitant damages. It appears that at one time the parties, including the plaintiff, valued the bonds at the rate of $72 per hundred, and it seems to us that sum, in any event, ought to be regarded as an outside limit of their value.